**FILED**
**Jan 24, 2019**
**03:04 PM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Jason Rhodes,** | ) | **Docket No.: 2018-01-0349** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Amazon.com, LLC,** | ) | **State File No.: 33747-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **American Zurich Insurance Company,** | ) | **Judge Thomas Wyatt** |
| **Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY PARTIAL DISABILITY BENEFITS

This matter came before the Court on January 14, 2019, for an Expedited Hearing to determine if Jason Rhodes should receive a panel or treatment by an orthopedist of his choice despite his refusal to see an orthopedist referred by the authorized treating physician. Mr. Rhodes also seeks temporary partial disability benefits for a period during which Amazon did not accommodate his restrictions. For the reasons below, the Court holds Mr. Rhodes is entitled to medical and temporary partial disability benefits.

### History of Claim

Mr. Rhodes injured his foot at Amazon when it was struck by a falling box containing sheet lead. He timely reported the injury, and Amazon provided a panel listing two walk-in clinics and orthopedist Dr. Rickey Hutcheson. Mr. Rhodes selected one of the clinics because it was nearer his home in Ft. Oglethorpe, Georgia than Dr. Hutcheson's office in Cleveland, Tennessee.[1]

---

[1] Ft. Oglethorpe is a few miles south of Chattanooga. Mr. Rhodes testified that he resides in the Chattanooga "community." During the hearing, Amazon established that Dr. Hutcheson's Ooltewah, Tennessee office is closer to Chattanooga than Cleveland. However, it did not prove that it offered Mr. Rhodes the option of seeing Dr. Hutcheson in Ooltewah.

Mr. Rhodes saw Dr. Natasha Ballard at the clinic the day after the injury. Dr. Ballard diagnosed a contusion and returned him to restricted work including the use of an open-toed walking boot. Mr. Rhodes testified Dr. Ballard told him Amazon would not let her take him out of work and would not approve the walking boot.

Mr. Rhodes returned to Amazon, but its medical personnel did not clear him to work because of the boot. They tried to fit it with a cap and an over-boot, but neither sufficiently accommodated Mr. Rhodes's return to work. He went to work on his next-scheduled day, April 22, but an HR representative told him without explanation that he was terminated. Mr. Rhodes remained out of work until June 2 when he obtained his current job.

Mr. Rhodes saw Dr. Ballard on April 22 and 27. The doctor imposed more stringent walking and standing restrictions and referred him to Dr. Hutcheson following the April 27 visit. Mr. Rhodes did not see Dr. Hutcheson because he previously declined to select him from Amazon's panel due to the driving distance from his home.[2] When Amazon insisted he see Dr. Hutcheson, Mr. Rhodes saw Chattanooga orthopedist Dr. Jesse Doty instead.

Dr. Ballard testified by deposition that she saw Mr. Rhodes "[f]or a foot injury that he sustained while working at Amazon." She provided a positive causation opinion: "[y]es, I said it was a contusion based on the box that fell on him at work." She later stated that the box falling on Mr. Rhodes' foot primarily caused his foot injury. She placed restrictions, including wearing a walking boot, following each visit.

Dr. Ballard referred Mr. Rhodes to Dr. Hutcheson because her treatment had not alleviated his symptoms. She testified she selected Dr. Hutcheson because:

> Dr. Hutcheson has just been, since we got the Amazon account, the kind of preferred physician for Amazon, just we are told that, you know, for orthopedic we prefer Dr. Hutcheson[.] Even though we are a panel state, it depends on the employer and particularly their preference. Some employers or case managers prefer certain physicians over others. Typically, we do that just to help speed up the process, so they can get in to see someone sooner.

Dr. Ballard conceded that several orthopedists practiced in close proximity to her in Chattanooga. When asked if anybody told her to refer Amazon employees to Dr. Hutcheson, Dr. Ballard answered, "[t]hat was told us by Michael Schock when we first started the account[.] When we first got that, he had given us something that they wanted

---

[2] Mr. Rhodes testified that Dr. Hutcheson's Cleveland, Tennessee office was a fifty-mile roundtrip from his home.

referrals to Dr. Hutcheson. So we've just kept that going ever since to him." Dr. Ballard later testified that, if Mr. Rhodes had not worked for Amazon, she would have referred him to an orthopedist clinic "up the street because it's easier and faster, honestly."

Dr. Doty testified by deposition that saw Mr. Rhodes once, on May 11, and diagnosed lateral foot strain with stress reaction of the fifth metatarsal bone. He stated, assuming the truthfulness of Mr. Rhodes's history that his foot was struck by a heavy box: "I certainly think this could have been caused by the work-related accident that he described." Dr. Doty placed Mr. Rhodes in a boot. He returned him to sedentary work for two weeks and on light duty for two weeks afterward. Dr. Doty testified that it is best that patients receive treatment from physicians in whom patients trust and have confidence, although that is not always feasible. He stated that he has referred patients to specific physicians because "based on feedback from case managers with workers' comp . . . I know there are certain physicians that they work with and have relationships with."

Mr. Rhodes argued that Amazon's placement of Dr. Hutcheson as the sole orthopedist on its panel, coupled with its requirement that the treating physician refer him only to Dr. Hutcheson for orthopedic care, usurped his right under Tennessee law to select his treating physician. Amazon countered that it complied with the law by giving Mr. Rhodes a panel of three physicians upon receiving notice of his work injury. It argued that the direct-referral statute does not impose restrictions or requisite criteria governing the treating physician's selection of a referral specialist. Thus, Amazon contended that its acceptance of Dr. Ballard's referral to Dr. Hutcheson bound Mr. Rhodes to go to Dr. Hutcheson if he wants orthopedic treatment.

### Findings of Fact and Conclusions of Law

#### *Medical Benefits*

At an expedited hearing, Mr. Rhodes must provide sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The resolution of the medical-benefits issue here turns on whether Mr. Rhodes can prove that the law allows him to compel a panel or see an orthopedist of his own selection despite his refusal to see the orthopedist to whom the treating physician referred him.

Mr. Rhodes first argued that his referral to Dr. Hutcheson is contrary to Tennessee law because the doctor is outside his community. Mr. Rhodes is correct that Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2018) provides that an employer must provide free medical care for an employee's work injuries by offering a panel listing "a group of three (3) or more independent reputable . . . specialty groups if available *in the injured employee's community*[.]" (Emphasis added.)

However, the parties did not provide, and the Court did not locate, a statutory or judicial definition of "the injured worker's community." While the Workers' Compensation Law references an employee's "community" or "residence" in other provisions relating to medical benefits,[3] it does not provide a bright-line rule defining an employee's "community" for purposes of subsection 50-6-204(a)(3)(A)(i). The Court holds that this absence indicates the general assembly's intent that disputes on this issue should be decided in view of what is fair under the totality of the applicable circumstances.

The Court disagrees with Mr. Rhodes that Amazon violated the law by insisting that he see an orthopedist in another city twenty-five miles away from his home. Had the general assembly intended to impose boundary-related restrictions on the "community" requirement, it could have used terms such as "city of residence" or "county of residence," but it did not. While seeing Dr. Hutcheson would be inconvenient for Mr. Rhodes, the Court will not hold that the inconvenience is sufficiently unfair to exclude Dr. Hutcheson as an appropriate physician under the "community" requirement.

Mr. Rhodes also contended that Amazon's placement of Dr. Hutcheson as the only orthopedist on its panel, coupled by its requirement that the treating physician send him to Dr. Hutcheson if orthopedic care was needed, usurped his right to select a physician under subsection 50-6-204(a)(3)(A)(i). He contends that the impact of Amazon's scheme was to direct him to a single physician in violation of the law.

Amazon is correct that the direct-referral process in subsection 50-6-204(a)(3)(A)(ii) permits the treating specialist to make a referral to a specialist "[w]hen necessary" and does not further restrict the specialist's decision. This provision also states that the employer is deemed to have accepted the referral unless it provides the employee a panel of specialists within three business days of the date it received notice of the referral. The statute is silent on whether the employee may request a panel after the employer accepts the direct referral.

However, considering the facts here, the Court agrees with Mr. Rhodes that Amazon essentially directed him to a single orthopedist. It placed only one orthopedist on its panel and directed the treating physician selected by Mr. Rhodes to refer him to Dr. Hutcheson, should he need orthopedic care.[4] Mr. Rhodes never received an alternate panel under subsection 50-6-2049(a)(3)(A)(ii) because, as would be expected, Amazon

---

[3] *See, e.g.,* subsection 50-6-204(a)(3)(b) (if three specialists do not practice in the employee's community, the employer can include specialists within a radius of 125 miles to fill out the panel); subsection 50-6-204(j)(2) (employer can include pain management physicians within 175 mile radius of employee's residence or place of employment on panel); and subsection 50-6-204(a)(6)(A) (providing for mileage reimbursement if the employee must drive more than fifteen miles for treatment.)

[4] The parties did not present evidence as to what would have resulted had Mr. Rhodes selected the other walk-in clinic on the panel.

4

accepted the referral to Dr. Hutcheson that it directed Dr. Ballard to make. The issue thus becomes whether the law affords Mr. Rhodes a remedy under these facts.

In *Ducros v. Metro Roofing and Metal Supply Co., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 62, at *10-11 (Oct. 17, 2017), the employer directed the employee to a single doctor for authorized care, who referred the employee to a specialist. After the employee received treatment from the specialist, the employer provided a panel of specialists from which the employee selected a new specialist. The employee became dissatisfied with the panel specialist and requested permission to return to the first specialist. He sought judicial recourse when the employer refused.

The Workers' Compensation Appeals Board reversed a denial of the employee's request. It cited long-held Supreme Court precedent, holding: "'[r]eferring the employee to a single physician does not comply with the statute; it is [a] usurpation of the privilege of the employee to choose the ultimate treating physician.'" *Employers Ins. of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn. 1975).

The Court holds Amazon's requirement that walk-in clinics on its panel must refer patients to Dr. Hutcheson is equivalent to directing orthopedic treatment to a single physician. While the direct-referral statute does not specifically impose criteria on the treating physician's selection of a specialist, the Court holds that an employer fails to comply with the spirit of the direct-referral statute when it removes the treating physician's neutrality by compelling referral to a specific specialist.

Therefore, the Court holds Mr. Rhodes established that, at a hearing on the merits, he will likely prevail in proving his entitlement to see an orthopedist other than Dr. Hutcheson. The Court orders that Amazon promptly provide a panel of orthopedists from which to select a treating orthopedist. Upon receiving Mr. Rhodes's selection, Amazon shall schedule a timely appointment with the selected orthopedist in his community.[5]

*Temporary Partial Disability Benefits*

The Court now turns to Mr. Rhodes's claim to temporary partial disability benefits. Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016).

Here, Amazon terminated Mr. Rhodes on April 22, and he remained out of work until June 1. Mr. Rhodes remained under partial disability as stated by both Drs. Ballard and Doty. Mr. Rhodes testified he tried to obtain work during the applicable period but was unsuccessful. Thus, he had no earnings during this period. In view of the above, the Court holds Mr. Rhodes established that, at trial, he will likely prevail in proving his

---

[5] The Court's decision on this issue moots Amazon's argument that Mr. Rhodes should be denied benefits because he refused authorized treatment.

5

entitlement to temporary partial disability benefits for five weeks and six days between April 22 and June 1. Amazon shall file a wage statement with the Court within ten days of this order, and it shall pay temporary partial disability benefits at the rate calculated in the wage statement.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon shall promptly provide Mr. Rhodes a panel of orthopedists in his community of residence and, upon receiving notice of his selection, it shall schedule as prompt an appointment as possible.

2. Amazon shall pay temporary partial disability benefits covering the period between April 22 and June 1. Amazon shall complete a wage statement and file it within ten days of this order, and it shall pay this award at the rate in the wage statement.

3. This matter is set for a Status Hearing on **2:00 p.m., Eastern Time, on April 15, 2019.** You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED January 24, 2019.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

6

# APPENDIX

<u>Exhibits</u>:
1. Affidavit of Jason Rhodes
2. First Report of Injury
3. Medical Records Compilation
   - AFC Urgent Care
   - Dr. Jesse Doty
   - Deposition of Dr. Natasha Ballard, with exhibits
   - Panel form signed by Jason Rhodes
   - Tennessee Valley Bone & Joint website information
   - Google Maps information
4. Deposition of Dr. Jesse Doty
5. Dr. Doty's response to medical questionnaire

<u>Technical record</u>:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's Additional Disputed Issue
4. Employer's Additional Disputed Issue
5. Request for Expedited Hearing-On-the-Record Decision
6. Response in Opposition to On-the-Record Hearing
7. Order for In-Person Expedited Hearing
8. Notice of Expedited Hearing
9. Employer's Pre-Hearing Brief
10. Employer Witness and Exhibit List
11. Employee Brief Supporting PBD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on January 24, 2019.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|------|---------------|------------------|-------|------------------|
| Tim Henshaw<br>Employee Attorney | | | X | tim@mcmahanlawfirm.com<br>missy@mcmahanlawfirm.com |
| Tiffany Sherrill<br>Employer Attorney | | | X | tbsherrill@mijs.com |

_Penny Shrum_ w/permission P

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE of APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information
**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits
☐  Medical benefits for current injury
☐  Medical benefits under prior order issued by the Court

### List of Parties
**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):_____** At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone:_____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]   _____

LB-1099   rev. 10/18                     Page 2 of 2                     RDA 11082



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | | |
|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires:_____